BARKDULL, Chief Judge.
By a lease indenture dated February 1, 1965, the appellants, as owners and lessors of certain property lying east of the inter-coastal waterway and west of AIA in *19 northeast Dade County, entered into a lease arrangement with the appellee, Coastal Bay Golf Club, Inc., covering a portion of said property.
The lease provided that the lessee should make certain improvements to the demised premises referred to as “initial capital investment” and had certain provisions pertaining to the repayment of this capital account. Under the lease terms, the rent was to be one-half of the net profits. The lessors agreed that pending the liquidation of the capital account, the rent would be abated. The lessors further provided that if they rented other property, which they held contiguous to the demised premises on the west side of AIA, that the rent so received from such contiguous parcels would likewise be used to satisfy the capital account. The lease also provided that in the event the rent from these contiguous parcels was utilized to liquidate the capital account, these monies would be repaid to the lessors from the net profits subsequent to the initial liquidation of the capital account. The exact terms of the lease relative to the above are set forth in footnote[1]. The lease also provided that the tenant would have a right of first refusal in the event the lessors received a bona fide offer for the demised property. This provision of the lease was the subject of prior litigation, which found that the tenant did not validly exercise this right of first refusal upon the owner receiving an offer to purchase. See: Coastal Bay Golf Club, Inc. v. Holbein, Fla.App.1970, 231 So.2d 854.
Subsequent to the cited opinion and the sale of the property, in accordance with the offer referred to therein, the lessee brought an action against the lessors seeking to recover damages for failure of the lessors to reimburse it for its capital improvements[2] At the final hearing, the *20 trial court determined that the balance remaining unpaid in the capital account was $94,215.04. It allowed the original defendants, as owners and lessors, a credit of one-half of the net profits for several years of operation to be applied against this amount, but did not allow the lessors to offset any rent received for the contiguous parcels, and denied relief on the third-party complaint by the original defendants against Watson and Anderson as co-executors apparently upon a finding of non-compliance with the non-claim statute [§ 733.16, Fla.Stat., F.S.A.].
The named lessors and the remaining defendants in the trial court appeal and assign error in the trial court not crediting them with the entire net profits earned on the demised premises as an offset against the capital account, for not crediting them for the rent earned on the contiguous facilities, and that the computation of interest was wrong. These appellants further assign error in the trial court barring its third-party complaint against the third-party defendants because of a failure to comply with § 733.16, Fla.Stat., F.S.A. [non-claim statute]. No cross-appeal was taken by the original plaintiff and the lessee on the $94,215.04 which was established as the balance due on the capital account, although the plaintiff had originally sought a much greater sum in its pleadings and by its evidence. So, at this stage of the proceedings, we are to accept as correct that the remaining balance on the “initial capital account” at the time of the sale was $94,215.04.
It appears that the trail judge erred in failing to allow the lessors a 100% credit for the net income for the years that the tenant earned such on the demised premises. We believe that paragraphs 12(b) and (f) of the lease make it clear that the lessors were entitled to a 100% credit. The appellants have also strongly urged that they were entitled to a credit towards payment of the capital account of the monies that were earned on the contiguous parcels, the plaintiff having put in evidence without dispute that this amount was $43,640.00. This requires a construction of paragraphs 12(e) and (f) of the lease. A reading of these two paragraphs together indicates that the lessors should be entitled to this credit because the plaintiff-lessee conceded that the contiguous properties had net earnings of $43,640.00 and, under the provisions of the lease, the tenants would have been required to repay the amount that was used in satisfying the capital account. Therefore, in determining the amount due to satisfy the capital account, the lessors should be entitled to this credit also.
Examining the error urged in the computation of the interest, it appears that interest should have been computed from the date the loans were made to establish the “initial capital account”, figured at the rate of ten (10%) per cent per annum simple interest, until the date the tenants should have applied certain net profits from the demised premises and the dates they should have credited the rents earned on the contiguous parcels. This matter will be returned to the trial court to compute these credits and the correct interest, with the taking of additional evidence if necessary.
Turning now to the appellants’ point on the non-claim statute, ■ the statute in question now reads as follows:

“733.16 Form and manner of presenting claims; limitation

(1) No claim or demand, whether due or not, direct or contingent, liquidated, or unliquidated, or claim for personal property in the possession of the personal representative or for damages, including but not limited to actions founded upon fraud or other wrongful act or commission of the decedent, shall be valid or binding upon an estate, or upon the personal representative thereof, or upon any heir, legatee or devisee of the decedent-- unless the same shall be in writ *21 ing and contained the place of residence and postoffice address of the claimant, and shall be sworn to by the claimant, his agent or attorney, and be filed in the office of the county judge granting letters. Any such claim or demand not so filed within six months from the time of the first publication of the notice to creditors shall be void even though the personal representative has recognized such claim or demand by paying a portion thereof or interest thereon or otherwise; and no cause of action, at law or in equity, heretofore or hereafter accruing, including but not limited to actions founded upon fraud or other wrongful act or omission, shall survive the death of the person against whom such claim may be made, whether suit be pending at the time of the death of such person or not, unless such claim be filed in the manner and within the said six months as aforesaid; * * * ”
It having been stipulated by the parties that the co-executors of the estate of the late P. L. Watson would be liable for one-half of any payments due by the lessors under the lease, it is apparent that due to the obligation of the lessors to reimburse the “initial capital account” out of the proceeds from any sale of lands owned contiguous and west of the highway, until such time as the “initial capital account” was satisfied per the terms of the lease, this was a contingent liability on the owners and lessors. This account remaining outstanding as of the date for filing of claims in the estate of the late P. L. Watson, it was a contingent liability and a claim should have been filed pursuant to § 733.-16, Fla.Stat., F.S.A. Re: Estate of Woods, 133 Fla. 730, 183 So. 10; American Surety Company of New York v. Murphy, 151 Fla. 151, 9 So.2d 355; Fowler v. Hartridge, 156 Fla. 585, 24 So.2d 306; Davis v. Evans, Fla.App.1961, 132 So.2d 476; Phillippi Creek Homes, Inc. v. Arnold, Fla.App. 1965, 174 So.2d 552.
Therefore, the final judgment, as it affixed the amount of the capital account due the original plaintiff, be and the same is hereby affirmed. But, that portion of the final judgment which attempted to determine the credits due the original lessors, be and the same is hereby reversed with directions for further proceedings in the trial court not inconsistent with this opinion. Lastly, the final judgment denying relief upon the third-party complaint filed against the co-executors, be, and the same is hereby affirmed.
Affirmed in part; reversed in part with directions.

. * * * * *
“4. RENT. The Tenant shall pay to the Onwer as rent for the leased premises an amount equal to one-half of the Tenant’s net profits before allowance for depreciation and before payment of Federal Income Taxes.
$ ‡ $
“12. LOAN REPAYMENT: In the event the Tenant or any of its officers, directors or stockholders of any combination thereof shall borrow any moneys, the proceeds of which are used to provide the ‘initial capital investment’ then and in such event the parties agree further as follows:
(a) The interest rate on said loan shall not exceed ten per cent (10%) per annum.
(b) The entire net profits of the Tenant after provisions for federal income taxes shall be used exclusively to repay the principal and interest of any such loans until all such loans are paid in full.
* * # * *
(d) The rent specified in Paragraph 4 above shall abate and be forgiven until the loans are paid in full.
(d) [sic] So long as any principal and interest of the loans remains unpaid, the Onwer expressly agrees to apply all net revenues she may receive from renting or leasing the properties owned by the Owner lying adjacent and contiguous to the leased premises west of U.S. Highway AIA to repaying said loans. Further the Owner agrees to apply the net proceeds after federal income or capital gains taxes derived from any sale of lands owned by the Owner adjacent and contiguous thereto and west of U.S. Highway Ala to repaying said loan.
(f) Any money expended by the Owner pursuant to sub-paragraph (S) (except as to moneys derived from the sale of leased property) shall be repaid to the Owner by the Tenant together with ten per cent (10%) interest per year thereon in the manner provided in subparagraph (a) and (B) of this paragraph.”
* s¡: sjs * *
Note: The second sub-paragrah (d) is scrivener’s error; erroneously labeled (d) and should be labeled (e).

. The complaint named, as party-defendants, William W. Watson and Thomas H. Anderson, as co-executors of the estate of P. L. Watson, deceased. They were subsequently dismissed as party-defendants but were brought into the action by the filing of a third-party complaint by the remaining original defendants [the original lessors], contending that the late P. L. Watson held an undisclosed one-half interest in the real property involved; that the executors [P. L. Watson having passed away between the time of the execution of the lease and the purchase and sale referred to in Coastal Bay Golf Club, Inc. v. Holbein, supra] received one-half of the proceeds of the purchase and sale and, therefore, were liable for one-half of any damages sustained by the original defendants.