Royal Jewelers Co. of Knoxville *et al v.* Hake.

(*Knoxville,* September Term, 1947.)

Opinion filed October 18, 1947.

Rehearing denied November 29, 1947.

JOEL H. ANDERSON, of Knoxville, for Royal Jewelers.

HAMMOND FOWLER, of Rockwood, and W. L. MOORE, of Nashville, for Hake, Com'r.

MR. JUSTICE GAILOR delivered the opinion of the Court.

This case prevents a controversy between certain employers, Royal Jewelers Company of Knoxville, Royal Jewelers Company of Maryville, and McKullocks of Maryville, and the Commissioner of the Department of Employment Security, over the proper construction of certain clauses of the Tennessee Unemployment Compensation Law, Code secs. 6901.1 through 6901.24. At a hearing before him, the defendant Commissioner having decided the matters in controversy adversely to the employers, they brought the record into the Chancery Court of Davidson County by *certiorari*. The Chancellor heard the cause on the record made before the Commissioner, the petition and the answer, and sustained the Commissioner. The employers have appealed to this Court.

For some years prior to March 1, 1946, S. Harry Busch and Rose B. Busch, as partners, operated three retail jewelry stores, under the name of the Royal Jewelers of Knoxville, the Royal Jewelers of Maryville, and McKullocks of Maryville. The two stores operated under the name of the Royal Jewelers at Knoxville and Maryville, each employed more than eight employees, but the store operated under the name of McKullocks employed less than that number, so that considered separately, the two stores operating under the name of the Royal Jewelers were liable for the tax under the Unemployment Compensation Act, Code sec. 6901.19(f), but the store operated under the name of McKullocks was not so subject to the tax. But since all three units were owned by the partnership they were regarded as one unit and the tax was levied and collected on the entire operation.

The maximum tax that may be demanded of any employer under the Act is 2.7 percent ''of wages payable by him with respect to employment'' in any calendar year. This maximum rate may be reduced by what are

termed "experience benefits," based on reserve remaining after all claims for unemployment compensation against the employing unit are deducted from the taxes paid in by such unit. The pertinent provision of the Act is as follows:

"The benefit experience of each employer is to be determined by his reserve ratio. His reserve ratio shall be determined by the following requirements:

"The total of all contributions paid by each employer minus the benefits (including all benefits for compensable weeks beginning prior to December 31 and paid within the following month) charged to his account divided by his taxable payroll for the most recent calendar year ending on the computation date. Provided, that in the event of a successorship or merger of employers or employing units, the combined experience of the employers or employing units involved shall be recomputed as of the first day of the calendar quarter immediately following such merger or successorship to determine a new reserve ratio and rate applicable to said combined or successor employer or employing unit." Code sec. 6901.7.

Under this provision, the partnership operation of the jewelry business with which we are here concerned, had reduced the tax from the maximum of 2.7 percent to 1 percent, the minimum.

As of March 1, 1946, the partners Busch, for reasons of their own, formed three separate corporations to take over the business of the partnership. These corporations are the complainants herein. The Busches owned all the stock in the three corporations, and the record shows no change after incorporation, in the number of employees or the general operation of the business. The Commissioner has undertaken to levy the tax at the maximum rate of 2.7 percent, while the complainants insist that they

are entitled to succeed to the "experience benefits" of the partnership and to continue to pay the tax at the rate of 1 percent, as did the partnership at the time of dissolution and the organization of the corporation. They make this claim under the provision of the Act with regard to successors and mergers copied above.

The Commissioner insists that that provision of the Code is limited in cases where one employing unit has acquired several such units, and that it does not apply to cases where several units have been created from one unit. Application of the rule made in Code sec. 14, that "singular includes the plural and the plural the singular," seems to us to settle the controversy in favor of the employer.

Applying the rule to that part of section 6901.7 copied above, the present situation will be covered exactly and the section will read: "Provided, that in the event of a successorship or merger of employer (s) or employing unit(s), the combined experience of the employer(s) or employing unit(s) involved shall be recomputed as of the first day of the calendar quarter immediately following such merger or successorship to determine a reserve ratio and rate applicable to said combined or successor employer(s) or employing unit(s)."

It cannot be doubted that the three complainant corporations are successor employers or employing units of the Busch partnership. This is fortified by applying the same rule (Code sec. 14) to the definition of "employer" is it is set out in Code sec. 6901.19(f) (2), which will then read: "Any individual(s) or employing unit(s) which acquired the organization, trade or business, or substantially all the assets thereof, of another which at the time of such acquisition was an employer(s) subject to this Act."

■ We might have reached the same result in a different way, by accepting the construction of the Busch reorganization and in corporation in its relation to the Unemployment Compensation Act as the parties themselves have construed it. The record discloses that the Commissioner, since the organization of the three corporations, to fix tax liability, has disregarded separate corporate entities and levied the tax on the Busch jewelry business as a single unit. Apparently the complainants have accepted this assessment and paid tax thereon without protest. Had the Commissioner respected the separate entity of the corporations, "McKullocks" would escape liability for the tax because it has less than eight employees, and so is not a liable employer under the Act. In fairness, if the three corporations are to be regarded as a single entity to fix tax liability they are to be regarded as a single entity to succeed to the experience benefits of the parent partnership.

The construction of this part of the Unemployment Compensation Act presents a new question in this Court, and cases from other jurisdictions cited by counsel are of little help since the statutes of the other states are not the same as our own. For example, the statutes of New Hampshire, Georgia and Florida contained no provision for a new employer, on acquiring the taxed business of a predecessor to succeed to his merit rating, so claims similar to the one made by complainants were denied. *C. A. Lund & Co.* v. *Rolfe*, 93 N. H. 280, 41 A. (2d) 226; *Schwob Mfg. Co.* v. *Huiet*, 69 Ga. App. 285, 25 S. E. (2d) 149; *Florida Industrial Commission* v. *Schwob Co.*, 153 Fla. 356, 14 So. (2d) 666. But since our Act (Code sec. 6901.7) provides for such succession to experience benefits, those cases are informative merely.

We note that in the *Lund case, supra,* and in *Packard Clothes* v. *Director of Division of Employment Security,* 318 Mass. 329, 61 N. E. (2d) 528, the proposition of disregarding "the fiction of corporate entity" and piercing "the veil of corporate structure" [93 N. H. 280, 41 A. (2d) 227] was a procedure approved to administer the Act justly if the facts were found to be as they are in the case before us here.

■ Finally, in reply to an argument of Commissioner's counsel, the contribution exacted of employers under the Unemployment Compensation Law is a tax, the Act a taxing statute and, therefore, doubts in the meaning of its provisions for assessment and collection of contributions are to be resolved in favor of employers as taxpayers. *Levy's Ladies Toggery* v. *Bryant,* Tenn. Sup., 192 S. W. (2d) 833, 836; *Wolfe* v. *Bryant,* 181 Tenn. 357, 181 S. W. (2d) 343; *Guaranty Mtg. Co. of Nashville* v. *Bryant,* 179 Tenn. 579, 586, 168 S. W. (2d) 182.

Decree reversed and cause remanded.

BURNETT, J., not participating.

## ON PETITION TO REHEAR

MR. JUSTICE GAILOR delivered the opinion of the Court.

On October 18, 1947, we rendered an opinion in favor of complainants on two grounds: (1) That a fair and reasonable construction of section 6901.7 (a) (2), Williams Ann. Code, 1946 Cumulative Pocket Supplement, justified application of section 14 of the Code. (2) That equity required that the same rule be adopted for credit on the tax as had been applied by the Commissioner in assessing the tax. Change in the form of the operation (as not

being a change in ownership) had been disregarded by the Commissioner for determining tax liability and it reasonably followed in fairness and common sense, that the change in form should also be disregarded in determining the credit or reduction in rate for which the complainants insisted.

Petition to rehear has been filed by defendant Commissioner. He first takes issue with the Court's application of Code sec. 14 to the construction of Code sec. 6901.7 (a) (2). It would serve no useful purpose to restate the reasons which prompted the Court to apply section 14. They are fully set out in the former opinion. The gist of the argument in the petition to rehear is that section 14 is inapplicable because it is expressly limited by the clause, "except when the contrary intention is manifest." Petitioner insists that such contrary intention was manifested by the legislative enactment of Code sec. 6901.19, which undertakes to prescribe definitions for various terms used in the Tennessee Unemployment Compensation Law, and among them a definition of "employing *unit* 6901.19 (e)" as being: "Any individual or type of organization, including any partnership, association, trust, estate, joint stock company, insurance company or corporation, whether domestic or foreign, or the receiver, trustee in bankruptcy trustee or successor thereof or the legal representative of a deceased person which has or subsequent to January 1, 1935, had in its employ one or more individuals performing services for it within this state."

All of these synonyms of "employing unit" are in the singular number and there is no definition attempted of "employing units" (the plural) but the first sentence of sec. 6901.19 indicates the proper course for construction. It is: "Definitions.—as used in this act, unless the context

clearly require otherwise:" The context of section 6901.7 and the undisputed facts of this case clearly required the application of Code sec. 14 to carry out our conclusion of the fair meaning of that part of the section which provided for business successors.

However, if we delete that part of the opinion which applies section 14 to the construction of section 6901.7, the judgment must remain unchanged for the second reason stated in the opinion. For the purpose of fixing the rate of tax or contribution of the employer, we adopt the method which the Commissioner, himself, had adopted for the assessment. Since Mr. and Mrs. Busch, though ceasing to be partners, still own all the shares of stock of the successor corporations, the Commissioner has disregarded the separation of the business of the partnership into three corporations, and for the purpose of tax liability, has assessed them as a single unit. That he has justified the course by a certain construction of the Act is immaterial. He has recognized that the controlling factor is a unity of ownership which is the same now as when the business was operated as a partnership. But disregarding the "tax experience" of the partnership, he has since the corporate organization, assessed the unit at a new and higher rate. If McKullocks', which as a separate corporation, would escape taxation because it has less than eight employees, is to be taxed as part of the Busch operation, and the operation so assessed as a unit, then the operation, though made up of three corporations, must be given the "experience benefit" to which the partnership was entitled at the time the three corporations succeeded to the entire business and assets of the partnership.

We confine his opinion to the facts of this record. A case might be stated where a partnership was divided

into corporations in such a way that some of the new corporations succeeded to a part of the partnership in which the "tax experience" was bad and others of the new corporations succeeded to parts of the partnership business where the experience was good. On evidence of the fact, each new corporation would as an incident of successorship, take the "experience" (good or bad) of that part of the partnership allocated to such corporation. However, the record here makes no such case and so far as the evidence shows, Royal of Knoxville, Royal of Maryville and McKullocks, all had the same "experience" and were all entitled to the lower rate of 1% provided in section 6901.7.

Finally, the petition to rehear suggests the dire consequences that will befall the Tennessee taxpayers at the hand of Federal authorities on account of our former opinion. (1) This argument is introduced in the petition *de novo* and is without any support in the record. (2) It is an argument to be addressed to the Legislature, not to this Court. The judicial function is to declare the law as we find it (*Anderson* v. *Wilson*, 289 U. S. 20, 27, 53 S. Ct. 417, 77 L. Ed. 1004), and it is for the Legislature to weigh the effect and consequences of legislation enacted.

The threat of disapproval by Federal bureaux is not such authority as would sway the course of our opinion in any event. It lacks all persuasive force in the present case, because we expressly confine the decision in the record before us, and the Act construed has apparently been repealed and a new Act substituted as Chapter 29 of Public Acts of 1947, which became effective on February 21, 1947.

Petition denied.

All concur.